**ENGLEWOOD (village) v BETTIS**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1164.   Decided May 19, 1933

Allaman, Funkhouser & Murr, Dayton, and I. C. Delscamp, Dayton, for plaintiff in error.

W. S. Rhotehamel, Dayton, for defendant in error.

## OPINION

By HORNBECK, PJ.

The section of the General Code upon which the trial court based its action in sustaining the demurrer is §1190 GC.

"It shall be unlawful for a village to erect or maintain traffic lights upon an extension of the State Highway System within such village, except that the erection and maintenance of such lights be first approved by the Director. The Director is hereby authorized to purchase, erect and maintain automatic traffic signals at such highway intersections on the state highway system as he may deem necessary."

It is claimed that this section is unconstitutional as a violation of the police power delegated to municipalities under the constitution and that it is a delegation of legislative power to the Superintendent of Highways of the State of Ohio.

The source of power of the legislature and of municipalities is the constitution. §3, **Article 18 of the Ohio Constitution** provides in part:

"That municipalities shall have authority to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws."

It is basic that before a statute can be declared unconstitutional it must be clearly in violation of some express provision of the constitution and a strong presumption must always be indulged in favor of the validity of legislative enactment. **Laver v Canfield, 7 O.C.C. (N.S.), 389; Cincinnati W. & Z. R. Co. v Clinton County, 1 Oh St, 77; State ex Weinberger v Miller, 87 Oh St, 12; Xenia v Schmidt, 101 Oh St, 347.**

If the ordinance upon which the affidavit against defendant is based is· not in contravention of general law then the court erred sustaining the demurrer. General laws have been defined to be those passed by the general assembly. **Leis v Cleveland R. Company, 101 Oh St, 162.** Obviously §1190 GC is a general law and does not, therefore, under the constitution invade any exclusive right of the village to enact an ordinance in the exercise of its police power inasmuch as the State and the municipalities secure their right to enact such legislation from the same source.

Does §1190 GC delegate legislative power to the Director of Highways? It will be observed that it limits the power of the director in erecting and maintaining traffic signals upon an extension of a State Highway to such as are necessary. If constitutional, the power granted to the Director could only be challenged upon an abuse of discretion. It is recognized that the legislature has full power to appoint administrative agents to accomplish legislative purpose. **Green v State Civil Service Commission, 90 Oh St, 252.** In this case the Civil Service Commission was authorized to prescribe, amend and enforce rules with reference to the Civil Service of the State and several counties and cities. It was held that the granting of such authority did not constitute a delegation of legislative power.

In **Ex Parte Company, 106 Oh St, 50** the court had under consideration the authority granted to the State Board of Health to adopt rules and regulations affecting public health and given wide latitude in promulgating and enforcing such rules and regulations. The right was supported. **France v State, 57 Oh St, 1,** considered similar delegated powers to the State Medical Board to regulate the practice of medicine. The act was upheld. In **Molliter v State, 6 O.C.C., 263,** the court held valid a statute which empowered a clerk of the police court to issue a warrant for arrest upon "probable cause," the clerk being given the power to determine whether or not such cause existed.

In **Yee Bow v City of Cleveland, 99 Oh St, 269** an ordinance regulated the operation of laundries and imposed upon an administrative officer as a prerequisite to the issuance of a license the duty of ascertaining whether sanitary and drainage arrangements were sufficient to protect the public health and whether "adequate ventilation" and "adequate plumbing and drainage facilities" are provided on the premises. Held ordinance did not confer arbitrary legislative or judicial powers upon such officer. This case, in our judgment, is analogous to the power delegated to the Director of Highways in the instant case. The court in the syllabus and in the opinion discussed the so-called arbitrary authority granted to the administrative officer and says it will not be presumed that the action of the administrative officer will be either arbitrary or unwarranted. Should it so prove to be, the agreed person would have the right of relief through the courts.

Wide powers have been accorded to liquor boards and supported by judicial authority. In **Mutual Film Corporation v Industrial**

Commission of Ohio et, 236 U. S., 230, 35 Sup. Ct. Rep. 387, the court was reviewing a decree refusing to restrain the enforcement of a state statute, 103 O. L., 399, granting wide powers to the State Board of Censors of Motion Picture Films. Among other attacks upon the legislation, it was claimed that "the board was given legislative power to determine the application of the statute without fixing any standard by which the board shall be guided in its determination; places within the power of the board the right to reject, "upon any whim or caprice, any film which may be presented, * * *." The court in the third proposition of the syllabus held:

"Legislative power is not unlawfully delegated by the provisions of 103 O. L., 399, for the creation of a board of censors which is to examine and censor, as a condition precedent to exhibition, motion picture films which are to be publicly exhibited and displayed in the state, and is to pass and approve only such films as are, in its judgment, of a moral, educational, or amusing and harmless character."

Justice McKenna, writing the opinion, at page 392 says:

"The objection to the statute is that it furnishes no standard of what is educational, moral, amusing, or harmless and hence leaves decision to arbitrary judgment, whim, and caprice; or, aside from those extremes, leaving it to the different views which might be entertained of the effect of the pictures, permitting the 'personal equation' to enter, resulting 'in unjust discrimination against some propagandist film,' while others might be approved without question. But the statute by its provisions guards against such variant judgments, and its terms, like other general terms, get precision from the sense and experience of men, and become certain and useful guides in reasoning and conduct. The exact specification of the instances of their application would be as impossible as the attempt would be futile. Upon such sense and experience, therefore, the law properly relies."

Many cases are cited. This question, in our judgment, satisfactorily meets the contention of plaintiff in error in the instant case, that the authority granted to the Director of Highways is an illegal delegation of legislative power.

Counsel for plaintiff direct our attention to the **City of Fremont v Keating**, 96 Oh St, 468, as being controlling in the instant case. We have analyzed the opinion in this case and do not find that it is in conflict with our construction of the statute, §1190 GC. In the cited case the legislature had, by §6307 GC, specifically provided that local authorities should not regulate the speed of motor vehicles by ordinance, by-law or resolution. §12604 GC was a speed statute providing among other things that it should be a violation of law to operate a motor vehicle at certain stated speeds within municipalities. This was the general law on the subject matter and it is obvious that when the legislature undertook to prevent the municipality enacting any legislation on the subject it was in violation of the constitutional provision because the municipality could only be limited by the provisions of §12604 GC.

The import of §1190 GC is to give, by general enactment, authority to the superintendent of highways to direct, control and supervise the erection of traffic lights at intersections along the state highway system. When a municipality by ordinance undertakes to legislate upon this subject without observing the provision of the general section granting certain authority to the superintendent of highways, it is legislating in violation of general law.

The theory of the legislature is plain, namely: to permit the main thoroughfares of the state to be maintained and controlled by central authority to the end that they may be most useful for the purposes intended, and also that the traveling public may not be delayed or caused to stop unnecessarily. Central authority in control of such highways can do it more effectively and make the thoroughfares of better service to the general public than to permit every municipality to act independently. A municipality should have no difficulty in securing the co-operation of the Director of Highways to erect all traffic lights required at intersections on the state highway system. If the Director should arbitrarily refuse to sanction erection of traffic lights, such abuse of discretion could be reached by appropriate judicial action. However, until such condition obtains, there is no danger of usurpation of authority to the detriment of municipalities.

The further objection urged by the plaintiff and the most difficult of determination is that the trial court took judicial notice of the fact that the intersection mentioned in the affidavit included a street which was a part of the state highway system.

The General Code specifically authorizes

the establishment of state highways and when so designated they become a part of the state highway system provided to be established by legislative enactment.

We find no case paralleling the facts in the instant case but some are helpful on principle. **17 O. Jur., 57,** discussing the rule, says:

"It is the general rule that state courts will take judicial notice of administrative regulations of considerable notoriety established by important state boards, such as railroad commissions, or the industrial commission of Ohio."

(Citing **Boone v State, 109 Oh St, 1; Industrial Commission v Collela, 17 Oh Ap 301.**)

"The annual reports published by the secretary of state relating to the votes cast at an election are public general information of which the courts may take judicial notice." (**State ex Meck v Deputy State Supers. of Election, 111 Oh St 203.**)

The state courts likewise take judicial notice of orders promulgated by the departments of the Federal Government pursuant to acts of Congress, Boone v State, supra.

But a determination of our question depends largely upon the provisions of the statute relating to state highways and state highway systems, §1189 GC. This is a long statute making many provisions. Insofar as applicable it provides for a state highway system and that all state highways established before the enactment of the section should, on and after it is effective, continue to be known as state highways and part of the state highway system. The Director is given further authority to establish and designate additional state highways or change existing state highways. It is further provided that within 120 days after the effective date of the act, the Director is to make or cause to be made a map showing thereon, by appropriate numbering or other designations, all state highways theretofore established as such highways and which at the time of the taking effect of this act are state highways and such highway system shall remain and be known as the state highway system unless otherwise changed as provided by law. It is further provided:

(2) (numbering ours) "A copy of such map certified to by the Director as a correct copy of the map on file in his office, shall be admissible as evidence in any court of the state to prove the existence and location of the several highways and roads of the state highway system."

The statute further provides * * *

(3) (numbering ours) "The state highway routes into or through municipal corporations, as the same are now designated or indicated by state highway route markers erected thereon, or as to the same may hereafter be designated or indicated as provided herein, are hereby declared to be state highways and a part of the state highway system. Any routes of the state highway system into or through municipal corporations not now designated by the erection of state highway route markers thereon shall be so designated prior to the first Monday of January, 1930. The director of highways shall be authorized to make any changes which he may think proper in the present routes of the state highway system into or through municipal corporations without notice, provided such changes are made prior to the first Monday of January, 1930. The director is hereby authorized to erect state highway route markers and such other signs directing traffic as he may think proper upon those portions of the state highway system lying within municipal corporations, and the consent of such municipal corporations to such erection and marking shall not be necessary. Subsequent to the first Monday of January, 1930, no change in the route of any state highway through a municipal corporation shall be made except after notice and hearing as hereinbefore provided."

This section became effective July 25, 1929. A reading of so much of the section as we have quoted discloses that it would be difficult and uncertain procedure to attempt to take judicial notice of the operation of that portion of the statute following number (3).

It has been held that the court may obtain the requested information from proper sources by investigation itself or through its officers and if the subject matter comes within the purview of that to which the court may take judicial notice, it is proper to so consider it. **Gaesse v State, 13 O.C.C. (N.S.) 385.**

The statute expressly states that a certified copy of such map shall be admissible as evidence in any court of the state to prove the existence and location of the several highways and roads of the state

highway system. This in itself would not preclude the court exercising its right to take judicial notice if the subject matter came within the rule. However, it is evident that the legislature only intended that a certified copy of the map on file in the office of the Director should be used as evidence and not to be accepted as a fact without such form of proof. This is a protection to a court inasmuch as changes in the State Highway System from time to time may be made by the Director. Although it is a close question and it is not especially vital to the ultimate determination of this case, we are of opinion that it would be safe judicial pronouncement to hold that courts should not take judicial notice of a road as a part of the state highway system but that proof of such fact should be required in the manner provided by §1189 GC.

We find no error in this record except in the one particular wherein the trial court took judicial notice that the intersection set forth in the affidavit included a street which was part of the state highway system. For this reason only the case will be reversed and remanded for further proceedings according to law.

KUNKLE and BARNES, JJ, concur.

## ON APPLICATION FOR RECONSIDERATION AND REDETERMINATION OF PART OF FORMER DECISION

### Decided June 26, 1933

HORNBECK, PJ.

Submitted on application of the defendant in error for reconsideration and redetermination of so much of our former decision as held that the trial court erred in taking judicial notice that one of the streets forming the intersection set out in the affidavit against defendant in error was a part of the State highway system. Defendant in error has presented a most extensive and helpful brief on the question and counsel for plaintiff in error have indicated that they do not desire to file any further brief in opposition to rehearing.

Upon rehearing we have decided to support the judgment of the trial court in its entirety and to hold that there was no prejudicial error in taking judicial notice of the subject matter in question.

As we indicated in our former opinion the question presented is a close one and though technically the action taken might be erroneous, it could not be prejudicial to plaintiff in error because, upon new trial, it would be a simple matter to present a copy of the State highway map certified by the Director of Highways and, thereupon, the court would be required to sustain a motion to dismiss and discharge the defendant.

It has long been the practice of courts to take judicial notice of locations and places appearing upon recognized maps, particularly those existing within the jurisdiction of the court (**Belden v State, 5 Abs, 135**) and it is common knowledge that the Director of Public Highways issues a map showing the roads comprising the State Highway System for public use. It would seem that such a map is entitled to as much judicial consideration as an ordinary map printed and distributed by some private concern.

Examination of this map of State Highways issued by the Director discloses that the National Pike, route 40, being one of the streets at the intersection in question, is a part of the State highway system. Then too, the thoroughfare under consideration is within the limits of the county in which the trial judge in the instant case resides. 15 R.C.L., 1057, discussing the subject, says:

"It may be stated generally with regard to the question as to what matters are properly of judicial cognizance that, while the power of judicial notice is to be exercised with caution, courts should take notice of whatever is or ought to be generally known, within the limits of their jurisdictions * * *."

And at page 1061:

"* * * the question whether this or that matter of fact will be judicially known in any particular case is very largely discretionary with the court."

Inasmuch as it is our obligation to support the judgment of the trial court, if it can be done without prejudice to plaintiff in error, and as it presents a constitutional question which can be determined by direct action to the Supreme Court if error is prosecuted and because of the fact that in our present judgment the trial court did not err to the prejudice of defendant below in taking judicial notice that one of the streets making up the intersection set forth in the indictment was a part of the State highway system we reverse our former decision and affirm the judgment of the trial court.

KUNKLE and BARNES, JJ, concur.